UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| SALLY REAVES, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-1230-B |
| | § | |
| UNITED STATES SMALL BUSINESS | § | |
| ADMINISTRATION, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Sally Reaves's Motion to Remand Wage Garnishment Determination to the U.S. Small Business Administration (Doc. 43). For the reasons discussed below, the Court **GRANTS** the Motion and **REMANDS** this case to the agency for additional findings.

I.

BACKGROUND

Plaintiff's present Motion arises out of a dispute with the Small Business Administration (SBA) regarding a March 15, 2018 Garnishment Hearing Decision (Doc. 24-1) that permitted Plaintiff's wages to be garnished.

In 2006, Plaintiff, as the owner of Sagebrush Solutions, LLC, opened a line of credit owed to PlainsCapital Bank that the SBA guaranteed (SBA Loan). Doc. 32, Pl.'s Am. Compl., ¶¶ 6, 8. Sagebrush was also obligated to pay PlainsCapital on other loans that were not guaranteed by the SBA (Conventional Loans). *Id.* ¶ 7. The liens securing the SBA Loan pre-dated the liens securing

the Conventional Loans. *Id.* Plaintiff pledged her personal securities account as collateral to personally guarantee both the SBA Loan and the Conventional Loans. *Id.* ¶ 8.

In 2012, the SBA and PlainsCapital agreed to a loan restructuring that gave PlainsCapital's Conventional Loans a first lien position and subordinated the SBA loan to a second lien position. Doc. 24–1, Hr'g Decision, 9. Thereafter, Sagebrush defaulted on the SBA Loan and PlainsCapital non-renewed the Conventional Loans. Doc. 32, Pl.'s Am. Compl., ¶ 10. PlainsCapital liquidated Plaintiff's personal securities account and applied the funds first to pay off the Conventional Loans and then applied the remaining funds to the SBA Loan. Doc. 24–1, Hr'g Decision, 72–74, 76. After the liquidation, the SBA Loan had a remaining unpaid balance of $343,462.61. *Id.* at 74. On October 7, 2015, PlainsCapital notified Plaintiff that her securities account had been liquidated and that the SBA Loan's remaining balance as of October 6, 2015 was $348,790.33, including interest. *Id.* at 106–07.

On March 6, 2017, the Department of the Treasury issued a wage garnishment order to Sagebrush, and Plaintiff filed a hearing request on March 25, 2017. *Id.* at 78, 108. In her request, Plaintiff alleged that PlainsCapital violated 31 U.S.C. § 3713 and 13 C.F.R. § 120.411 by paying itself first. *Id.* at 110–11. Plaintiff also alleged that the structure of the SBA Loan and the Conventional Loans violated the SBA's Standard Operating Procedures. *Id.* at 111. On July 14, 2017, the Hearing Officer sent a letter to Plaintiff requesting that any additional documents she would like to provide be submitted by August 11, 2017. *Id.* at 79. Plaintiff responded to this request on August 7, 2017, by sending another letter to the Hearing Officer supporting her claims. *See id.* at 83–85.

The Hearing Officer issued a Garnishment Hearing Decision on March 15, 2018, finding that Plaintiff's wages should be garnished. *Id.* at 2. The findings were, in relevant part:

A. SBA consented to a lower lien position on the SBA Loan

The SBA loan was modified fifteen times. Thirteenth modification occurred on April 11, 2012 . . .

As part of that modification, PlainsCapital Bank sought SBA's approval to subordinate the first position lien on the Securities Accounts securing the SBA Loan to second position, giving PlainsCapital Bank a first position lien to secure its Conventional Loans. SBA approved this on April 6, 2012 . . .

Further, PlainsCapital Bank was not obligated to tell you or to get your permission to subordinate the Securities Accounts to another loan. As part of the original loan transaction you signed an Unconditional Guaranty Agreement . . . that states in pertinent part: "4. Rights of Lender . . . (c) If any or all of the Obligations are now or hereafter secured in whole or in part, Guarantor agrees that Lender may, from time to time, at its discretion, and with or without valuable consideration allow substitution, withdrawal, . . . subordination, . . . or other impairment of all or any of such security or collateral, without notice to or consent by Guarantor, and without in anywise [sic] impairing, diminishing, or releasing the liability of Guarantor hereunder.

Your argument that PlainsCapital Bank improperly gave itself a preference is incorrect. SBA had approved the change in its lien position as to the Securities Accounts therefore PlainsCapital Bank acted correctly and SBA was not harmed. SBA's consent to lower its lien position is dispositive. This results in an unpaid balance on the SBA guaranteed loan which SBA may now collect. I find no evidence supporting the theory that PlainsCapital Bank improperly applied payments to itself first: you are still obligated to the SBA for the unpaid balance on the SBA Loan.

Doc. 24–1, Hr'g Decision, 4–5.

Plaintiff then initiated this civil action objecting to the Hearing Officer's decision. *See* Doc. 32, Pl.'s Am. Compl. Plaintiff requested discovery outside of the administrative record regarding the propriety of the SBA's consent to subordination—an issue that the SBA contends was waived by Plaintiff's failure to bring the issue before the Hearing Officer. Doc. 41, Order. The SBA then filed a Motion for Protective Order on discovery outside of the administrative record, which was granted by the Magistrate Judge on February 11, 2019. *Id.* The Magistrate Judge noted that, as the SBA

conceded, the subordination issue would either be rejected as waived or require remand for additional investigation or explanation by the Hearing Officer. *Id.* This led Plaintiff to file the present Motion to Remand to the SBA, claiming that the SBA failed to adequately address her objections to the wage garnishment: (1) that the SBA improperly consented to subordination; (2) that the loans were in an improper "piggybacking" structure; and (3) the structure violated 31 U.S.C. § 3713. *See* Doc. 43, Pl.'s Mot. As the Motion is fully briefed, the Court addresses Plaintiff's requested relief.

## II.

## LEGAL STANDARD

Courts review agency actions under the Administrative Procedures Act (APA), which "prescribes a narrow and highly deferential standard." *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010). Under the APA, a reviewing court should set aside an agency decision in only limited circumstances, such as if that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1966). Under this standard, courts must assure themselves that the agency considered the relevant factors and that there is substantial evidence in the record to support the agency's decision. *Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 455 (5th Cir. 2003). But a court cannot substitute its judgment for that of the agency. *Id.*

Indeed, in some circumstances, a court cannot perform this review without remanding the case back for further development at the administrative level. Specifically:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo*

inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). In short, in determining whether remand is appropriate, courts consider whether the issues raised for review were adequately addressed below, and if they were not raised, whether failure to raise those issues resulted in waiver.

Issue exhaustion may be required by statute or regulation, or judicially imposed. *Delta Found., Inc. v. United States*, 303 F.3d 551, 560 (5th Cir. 2002) (citing *Sims v. Apfel*, 530 U.S. 103 (2000)). The general rule of judicially imposed issue exhaustion stems from an "'analogy to the rule that appellate courts will not consider arguments not raised before trial courts.'" *Id.* at 560 (quoting *Sims*, 530 U.S. at 108–09). In the absence of a statute or regulation requiring issue exhaustion, courts inquire into whether the administrative proceeding was sufficiently "adversarial" to warrant issue exhaustion at the administrative level. *Id.* "The rationale for requiring issue exhaustion is that parties should have an opportunity to offer evidence before the administrative agency charged with the fact finding responsibility." *Id.* When the parties are expected to develop the issues in an adversarial administrative proceeding, the rationale for requiring issue exhaustion is at its greatest. *Id.*

## III.

## ANALYSIS

In her Motion, Plaintiff raises three issues that she says were inadequately addressed by the Hearing Officer: (1) that the SBA improperly consented to subordination; (2) that the loans were in an improper "piggybacking" structure; and (3) the structure violated 31 U.S.C. § 3713. *See* Doc. 43, Pl.'s Mot. The parties dispute whether the first issue was raised at all at the administrative level, or if that was even necessary; to address this argument, the Court first addresses whether issue

exhaustion was required, then whether Plaintiff waived her right to raise this argument. Plaintiff's second and third objections were raised below, but the parties dispute whether the Hearing Officer's decision provides enough detail for this Court to meaningful review that decision. The Court addresses those objections together, after addressing Plaintiff's first objection, which the Court turns to now.

A.  *Whether the Garnishment Hearing Was Sufficiently Adversarial such that Issue Exhaustion Applies*

The Court begins its analysis by considering whether the SBA's Garnishment Hearing was sufficiently adversarial to require issue exhaustion at the administrative level. Both parties agree that neither a statute nor administrative regulation requires issue exhaustion at a SBA Garnishment Hearing. Doc. 50, Pl.'s Reply, 3; Doc. 48, Defs.' Resp., 10. Accordingly, the Court examines whether the administrative process was sufficiently adversarial such that failing to properly raise an issue at the proceeding results in a waiver. *See Sims*, 530 U.S. at 109–12. If issue exhaustion was required, then Plaintiff may have waived her right to argue her first objection—that the SBA improperly consented to subordination.

Plaintiff relies in part on the decision in *Sims* to support her argument that the SBA's Garnishment Hearing was not sufficiently adversarial. *See* Doc 50, Pl.'s Reply, 3. In *Sims*, the Supreme Court held that it would not judicially impose an issue-exhaustion requirement for Social Security Administration proceedings. 530 U.S. at 105. But there was not a majority as to why, although the Court did agree that administrative issue exhaustion is the "general rule." *Sims*, 530 U.S. at 109. Noting that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings," a plurality of the Court concluded that Social Security proceedings are "inquisitorial rather than adversarial," and thus held that imposing an issue-

exhaustion requirement would be improper. *Id.* at 110–12. In reaching its conclusion, the plurality specifically noted that the Administrative Law Judge (ALJ) is charged with investigating facts and developing arguments both for and against granting benefits. *Id.* at 111. The Social Security Commissioner has no representative before the ALJ to oppose a claim for benefits. *Id.* The plurality also noted that the regulations of the Social Security Administration (SSA) themselves acknowledge that the SSA "conduct[s] the administrative review process in an informal, nonadversary manner." *Id.* (alteration in original) (citing 20 C.F.R. § 404.900(b) (1999)). Finally, the plurality noted that the form on which claimants request review provides only three lines to state the details of a claim, bolstering the conclusion that the Appeals Council does not rely on the parties to identify the issues. *Id.* at 111–12. Meanwhile, Justice O'Connor, who concurred in the judgment, argued for a more lenient standard that would disfavor issue exhaustion, and opined that "the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for [the Court's] decision." *Id.* at 113 (O'Connor, J., concurring).

The Court acknowledges that SBA's proceedings provide more safeguards than the SSA proceedings as described in *Sims*. Unlike the SSA's process, the SBA's Hearing Official is not required to develop arguments for both sides, but rather evaluates the facts and arguments of both Plaintiff and the SBA to render a decision that includes findings, analysis, and conclusions. *See* 13 C.F.R. § 140.11(f)(8)(i)–(ii), (10), (11)(ii) (2015); *cf. Sims*, 530 U.S. at 111. In addition, the SBA has the burden of proving the existence or the amount of debt, and Plaintiff has the burden of proving by a preponderance of the evidence that no debt exists or the amount is incorrect. 13 C.F.R. § 140.11(f)(8)(i)–(ii); *cf. Sims*, 530 U.S. at 111. The SBA's wage garnishment regulations do not state that the hearing is to be "nonadversar[ial]." *Compare* 13 C.F.R. § 140.11(f), *with* 20 C.F.R. §

404.900(b). Finally, unlike the SSA's three-line complaint form, the SBA process relies on a plaintiff to help identify issues; for example, by allowing a plaintiff to submit any evidence regarding the debt owed. This includes any evidence that the terms of repayment are unlawful, or would cause financial hardship, or that collecting the debt is illegal. 13 C.F.R. § 140.11(f)(7)(iii), (8)(ii); *see* Doc. 24-1, Hr'g Decision, 79.

Nevertheless, Plaintiff contends that the Garnishment Hearing was not sufficiently adversarial because she was not afforded a pre-hearing conference, the opportunity to make opening and closing statements, or the opportunity to submit briefs. Doc. 50, Pl.'s Reply, 3–4 (citing *Delta Foundation, Inc. v. U.S.*, 303 F.3d 551, 561–62 (5th Cir. 2002)). Plaintiff alleges that if she had been afforded these procedures, she would have known to raise the subordination issue during the proceeding, before the administrative decision was issued. *Id.* at 4.

In *Delta Foundation*, the Fifth Circuit distinguished *Sims* and held that issue exhaustion was required in proceedings before the Department of Health and Human Services (HHS) Departmental Appeals Board (DAB). 303 F.3d at 554, 562. The Fifth Circuit noted:

> Both parties in a proceeding before the DAB may be represented, and each party participates in developing an appeal file for the DAB to review, including written arguments supportive of the party's claims. 45 C.F.R. §§ 16.6, 16.8. In order to promote development of the record, the Board may request additional documents or information from the parties, require briefing on the issues in the case, issue orders to show cause and hold preliminary conferences. 45 C.F.R. § 16.9. After the DAB has reviewed the file, the DAB or one of the parties may request a conference in which each party's representative may make oral presentations and submit briefs. 45 C.F.R. § 16.10. Additionally, the appellant may request a hearing, which, while remaining "informal," provides each side with an opportunity to make opening and closing statements, and present and cross-examine witnesses. 45 C.F.R. § 16.11(d)(1). Following the hearing, parties are allowed to submit post-hearing briefs or proposed findings and conclusions. 45 C.F.R. § 16.11(e).

*Id.* at 561. The Sixth Circuit, considering issue exhaustion in another context, summarized *Delta*

*Foundation* as considering four factors: "(1) the aggrieved party and the agency's representative appeared before the DAB; (2) each party participated in developing an appeal file; (3) each party could make oral presentations, submit briefs, and cross-examine witnesses; and (4) each party was afforded leave to submit post-hearing briefs." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 464–65 (6th Cir. 2004).

Here, the last two of the four factors are not met. There was no opportunity to request a pre-hearing conference, nor a hearing for each side to make opening and closing statements and present and cross-examine witnesses. Nor was there an opportunity to submit post-hearing briefs and findings of fact and conclusions of law. This suggests the proceeding was not sufficiently adverse as to impose an issue-exhaustion requirement. And bolstering a finding that the procedure was insufficiently adversarial is the fact that Plaintiff first learned about the subordination when she received the SBA's March 15, 2018 Garnishment Hearing Decision—only *after* proceedings had been finalized. Doc. 43, Pl.'s Mot, 6.

Thus, on balance, it does not appear that the proceeding was sufficiently adversarial, and issue exhaustion should not be required. However, for the reasons discussed below, the Court finds it appropriate to remand for additional findings, as the agency is most suited to address the issues raised by Plaintiff, and it has not fully addressed each of the issues she raised.[1] In addition, the Court considers—in the alternative—whether Plaintiff waived her argument that the SBA improperly consented to subordination, even if issue exhaustion is required in wage garnishment proceedings.

B.      *Even if Issue Exhaustion is Required, Plaintiff Did Not Waive the Issue of Whether the SBA*

---

[1] The parties do not argue that remand is improper if Plaintiff did not have a responsibility to exhaust issues at the administrative level first.

*Improperly Consented to Subordination*

When an administrative proceeding is sufficiently adversarial to require issue exhaustion, a plaintiff waives the right to bring issues that were not—but should have been—raised at the administrative level. *See Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 487 (5th Cir. 2000). Plaintiff contends, however, that she did not waive her challenge alleging that the SBA improperly consented to subordination because: (1) she did not know that the subordination occurred; or alternatively, (2) she did indeed raise the issue in the administrative proceeding. Doc. 43, Pl.'s Mot., 9–10; Doc. 50, Pl.'s Reply, 4, 6. Defendants argue that Plaintiff waived any such challenge, but concede that if the issue was not waived, remand is proper because the Hearing Officer did not know to address the propriety of the subordination. Doc. 41, Order; Doc. 48, Defs.' Resp., 10–12.

First, Plaintiff claims that she could not have waived her objection that the SBA improperly consented to subordination because she was not aware that the loans were subordinated until the Garnishment Hearing Decision. Doc. 43, Pl.'s Mot. to Remand, 9; Doc. 50, Pl.'s Reply, 4–6. As the Hearing Officer noted in its decision, by signing an Unconditional Guaranty Agreement as part of the original loan transaction, Plaintiff expressly agreed that subordinations could occur without receiving notice or requiring her consent. Doc. 24–1, Hr'g Decision, 5. Plaintiff, as the personal guarantor, specifically agreed that:

> (c) If any or all of the Obligations are now or hereafter secured in whole or in part, Guarantor agrees that Lender may, from time to time, at its discretion, and with or without valuable consideration allow substitution, withdrawal, . . . *subordination*, . . . or other impairment of all or any of such security or collateral, *without notice to or consent by Guarantor*, and without in anywise impairing, diminishing, or releasing the liability of Guarantor hereunder.

*Id.* at 5, 13 (emphasis added). But the Hearing Officer did not address whether with this language, Plaintiff had waived her right to argue that *the SBA* improperly consented to subordination. And the general rule is that a party must know about a right before that right can be waived. Thus, the Court finds that remand is appropriate for more detailed findings to be made on the whether the SBA improperly consented to subordination.[2]

C.  *Whether the SBA Sufficiently Addressed Plaintiff's Remaining Arguments*

Finally, Plaintiff alleges that the SBA failed to adequately address her remaining arguments regarding 31 U.S.C. § 3713 and piggybacking. Doc. 43, Pl.'s Mot., 10; Doc. 50, Pl.'s Reply, 6–7. Plaintiff argues that "the SBA did not explain its wage garnishment decision so as to frustrate judicial review." Doc. 50, Pl.'s Reply, 1 (citing *Medina*, 602 F.3d at 706). Defendants disagree, and explain how in their view the Hearing Officer's decision was proper. Doc. 48, Defs.' Resp., 13–15. After considering both sides, the Court finds remand on these two issues is the appropriate course of action as well.

Plaintiff raised her objections to the alleged 31 U.S.C. § 3713 and piggybacking violations in three separate documents in the administrative record. *See* Doc 24–1, Hr'g Decision, 83–85, 109–12, 145–47. However, the SBA never specifically addressed these objections in its analysis or decision. *See id.* at 1–7. Rather, it appears that the SBA simply concluded that because the SBA consented

---

[2] Having found remand is proper to address whether the SBA improperly consented to subordination, the Court does not need to address Plaintiff's argument in the alternative, which is that Plaintiff did raise this issue at the administrative level, yet the agency failed to address it. Doc. 43, Pl.'s Mot., 10; Doc. 50, Pl.'s Reply, 6. However, the Court finds that the Hearing Officer was not aware of the propriety-of-subordination issue. Thus, the Court is not persuaded by Plaintiff's attempts to analogize to *Trinity Industries, Inc. v. Occupational Safety & Health Review Commission*, 206 F.3d 539, 542 (5th Cir. 2000), in which the Fifth Circuit found that an issue was preserved for judicial review when the agency expressly declined to address it because it was first raised in briefing, not in the petition for review. Here, the issue was never expressly raised.

to the subordination, wage garnishment was proper. *Id.* at 5 ("SBA's consent to lower its lien position is dispositive."). The SBA provided no reasoning as to why the loan structure did not violate the SBA's procedures prohibiting piggybacking, nor did the SBA explain why the liquidation allocation did not violate 31 U.S.C. § 3713. *See id.* at 1–6.

Although Defendants offer their own reasoning as to why these laws and procedures were not violated, Doc. 48, Defs.' Resp., 13–15, the Court "must focus on the justifications expressed by the agency at the time of its ruling." *Budhathoki v. Nielsen*, 898 F.3d 504, 515 (5th Cir. 2018). "It is not the role of the courts to speculate on reasons that might have supported an agency's decision," nor may the Court supply a reasoned basis that the agency itself has not given. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016). In addition, courts should not attempt to make up for an agency's deficiencies when its decisions are based on invalid reasoning. *Nielsen*, 898 F.3d at 515. If an agency's reasoning is "inadequate or improper, the Court is 'powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" *Assoc. Concerned About Tomorrow, Inc. (ACT) v. Dole*, 610 F. Supp. 1101, 1116 (N.D. Tex. June 4, 1985) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). In this case, the SBA did not specifically address Plaintiff's legal and procedural challenges, instead merely stated that the "SBA's consent to lower its lien position [was] dispositive." *See* Doc 24–1, Hr'g Decision, 5. The Court finds this reasoning inadequate for a proper review and concludes that remand is warranted to supplement the record to sufficiently address Plaintiff's contentions regarding 31 U.S.C. § 3713 and piggybacking.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion to Remand Wage

Garnishment Determination to the SBA (Doc. 43).

This case is **REMANDED** to the United States Small Business Administration to make specific findings on Plaintiff's objections to administrative wage garnishment, namely whether the SBA violated its own Standard Operating Procedures, including SOP 50 10 5, SOP 50 504, and 31 U.S.C. § 3713 by:

    a. Permitting the subordination of the SBA's first lien position in the collateral at issue to PlainsCapital Bank, an SBA lender;

    b. Permitting the SBA-guaranteed line of credit at issue to be in a piggyback structure; and

    c. Permitting the proceeds from the liquidation of the collateral for the SBA-guaranteed line of credit to be applied first to the amount owed on the loans from PlainsCapital Bank rather than applying the proceeds from the liquidation of the collateral first to the amount owed on SBA-guaranteed line of credit.

In the interim, this lawsuit is **STAYED** until such time as the SBA files a Supplemental Administrative Record with these additional findings. The parties are **DIRECTED** to file a joint status report **within 180 days** from the date of this Order if the Supplemental Administrative Record has not been filed within that time.

    SO ORDERED.

    SIGNED: August 16, 2019.

                                  JANE J. BOYLE
                                  UNITED STATES DISTRICT